IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SARAH ARNSON, et al().<br><br>Plaintiffs,<br><br>v.<br><br>MY INVESTING PLACE L.L.C., et al.,<br><br>Defendants. | MEMORANDUM DECISION<br><br>AND ORDER<br><br>Case No. 2:12-cv-865 |

The Plaintiffs in this case invested in a real estate development project called the Indian Ridge Resort Community. The investment opportunity was created and marketed by a group of investment companies who convinced the Plaintiffs to become credit partners in the project. The resort community was to contain duplexes, luxury residential units, a golf course, a water park, shopping, and other amenities. The Plaintiffs took title to some of the lots on the property and, on the strength of their credit, obtained construction financing for duplexes to be built on the lots. In exchange, the investment companies promised to pay the Plaintiffs a flat fee of $5,000 for each duplex financed. The investment companies were to make the payments on the loans and to clear the Plaintiffs' credit by either selling the units after they were built or by refinancing the loans. The investment companies failed to develop the project as promised and did not make the required payments on the construction loans. The loans went into default, leaving the Plaintiffs obligated for the construction financing and with damaged credit.

1

The Plaintiffs brought suit against the investment companies and other individuals and entities that were associated with the investment scheme. The Honorable David Nuffer dismissed their case for lack of subject matter jurisdiction on June 7, 2012. The Plaintiffs then filed a similar action in state court that additionally stated causes of action against Defendants Lawrence Bank and its Vice-President, David Clark.[1] Lawrence Bank was one of the lending institutions that provided the financing for the construction loans. Lawrence Bank and Mr. Clark removed the action to federal court and these two Defendants now move this court to dismiss the action against them for failure to state a claim upon which relief may be granted. For the reasons stated below, the court GRANTS their motion.

## BACKGROUND

Several Defendants in this case set up the investment scheme involving the Indian Ridge Resort Community. The key players developing and promoting the scheme included My Investing Place L.L.C., Western Site Services/Tri Global, and the owners of Western Site Services/Tri Global, David Drake and Don Snider.[2] The scheme essentially involved using the Plaintiffs' credit to finance construction of several duplexes in the resort community, which was located in West Branson, Missouri. The Indian Ridge Resort Community was to have thousands of residential units and several luxury amenities, including a water park, a golf course, and a convention center. The Indian Ridge Defendants worked together to attract investors for the

---

[1] The Plaintiffs also alleged an additional cause of action under the civil Racketeer Influenced and Corrupt Organizations Act (RICO).

[2] The Plaintiffs allege that other key players included James Shirato, The Shirato Indian Ridge Business Entities, North Shore Investments, L.L.C., Brent Clarkson, and Elizabeth McCleery. The court refers to the key players collectively as the Indian Ridge Defendants. This group of Defendants does not include Lawrence Bank or Mr. Clark.

project. In late 2006 and early 2007, My Investing Place held real estate investment meetings in Sandy, Utah, where it pitched the opportunity to invest in Indian Ridge.

After hearing the investment pitch, the Plaintiffs executed construction agreements with Western Site Services/Tri Global. Under these contracts, the Plaintiffs paid a refundable $3,000 reservation fee per unit and became "credit partners" in Indian Ridge, which meant that the Plaintiffs used their credit to take out construction loans in order to provide financing for the construction of individual units. The Plaintiffs were not required to make any financial outlay other than the use of their credit and a $3,000 reservation fee per unit, which was to be refunded once financing was successfully secured. In exchange, the Indian Ridge Defendants were to pay the Plaintiffs a flat fee of $5,000 for each duplex financed, make payments on the construction loans, and clear the Plaintiffs' credit either by selling the units after they were built or by refinancing the loans. The Plaintiffs could also elect to keep the property as a secondary residence or as a rental unit, but most of the Plaintiffs elected to have their duplex sold upon construction. The duplexes were to be completed within four months. Essentially, the Plaintiffs were financing the construction project in exchange for a fixed rate of return promised by the Indian Ridge Defendants.

As part of the investment plan, the Indian Ridge Defendants sought out banks who were willing to disburse construction loans to the Plaintiffs. Columbian Bank and Wells Fargo initially agreed to provide financing. Lawrence Bank and Mr. Clark became involved when Wells Fargo started forwarding loan applications to Lawrence Bank. Once the Plaintiffs obtained the construction loans, the Indian Ridge Defendants made periodic requests to disburse funds from these loans. After the Plaintiffs approved a draw request, Lawrence Bank would disburse

the funds to Western Site Services/Tri Global. Despite initial improvements on the lots, construction soon slowed down and eventually stopped entirely. None of the lots have been completed. The loans have gone into default because the Indian Ridge Defendants failed to make the required loan payments. The Plaintiffs are now responsible for the defaulted loans.

In March 2009, the Plaintiffs filed suit against the Indian Ridge Defendants. *See Arnson v. My Investment Place*, 2012 WL 2922683 (D. Utah June 7, 2012). The Plaintiffs asserted that the federal court had jurisdiction over the case based on claims for violation of federal securities law. *Id.* at *1. On June 7, 2012, the court dismissed the case for lack of subject matter jurisdiction because it found that the investment instruments involved did not constitute securities under the relevant federal laws. *Id* at *7-8, 11. In an attempt to keep the case in federal court, the Plaintiffs moved to amend their Complaint for a fourth time to include RICO claims and the two new Defendants present here: Lawrence Bank and Mr. Clark. *Id.* at *10-11. The court denied the Motion for Leave to Amend because the proposed amendment appeared to be an attempt to maintain subject matter jurisdiction, and courts "do not favor permitting a party to attempt to salvage a lost case by untimely suggestion of new theories of recovery." *Id.* at 11 (citing *Hayes v. Whitman*, 264 F.3d 1017, 1027 (10th Cir. 2001)).

The Plaintiffs then filed a substantially similar Complaint in Utah state court on July 18, 2012. In their new Complaint, the Plaintiffs included a cause of action under RICO and added Lawrence Bank and Mr. Clark as Defendants. The Plaintiffs allege that Lawrence Bank and Mr. Clark made misrepresentations in the initial loan documents. In October 2007, Mr. Clark and Les Dreiling, the president of Lawrence Bank, met with one of the Indian Ridge Defendants and inspected the lots. At the time, there was little to no improvement on the lots. But the loan

4

documents contained language stating that the Plaintiffs represented and warranted that utilities were available at the boundaries of the land. Because the Plaintiffs were from out-of-state and could not verify the information in the loan documents, and because Lawrence Bank should have known that this language was inaccurate based on its inspection of the lots, the Plaintiffs maintain that Lawrence Bank had a duty to exclude this language from the loan documents. The Plaintiffs also allege that Mr. Clark performed additional inspections of the lots and received monthly updates on the progress of construction. In spite of the knowledge that minimal work had been done on the lots after six to nine months, the Plaintiffs maintain that Lawrence Bank failed to notify Plaintiffs of the lack of progress. Instead, the bank continued to disburse funds from the construction loans.

Lawrence Bank and Mr. Clark removed the Plaintiffs' second case to federal court, where jurisdiction is appropriate due to the question of federal law raised by the RICO claim. These two Defendants now move the court to dismiss all the claims against them.

ANALYSIS

**I.      Standard of Review**

When reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the court must presume the truth of all well-pleaded facts in the complaint, but need not consider conclusory allegations. *Tal v. Hogan*, 453 F.3d 1244, 1252 (2006), *cert. denied*, 127 S. Ct. 1334 (2007); *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976). Conclusory allegations are allegations that "do not allege the factual basis" for the claim. *Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995). *See also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("conclusory allegations *without supporting factual averments* are insufficient to

state a claim on which relief can be based") (emphasis added). The court is not bound by a complaint's legal conclusions, deductions and opinions couched as facts. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And although all reasonable inferences must be drawn in the non-moving party's favor, *Tal*, 453 F.3d at 1252, a complaint will only survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

For the reasons stated below the court finds that the claims against Lawrence Bank and Mr. Clark are not facially plausible. Consequently, the court dismisses all of the claims against Lawrence Bank and Mr. Clark.

## II. Negligence and Breach of Fiduciary Duty

The Plaintiffs assert causes of action for negligence and for breach of a fiduciary duty against Lawrence Bank and Mr. Clark. The court finds that both claims fail because the Plaintiffs cannot show that these Defendants owed them a duty of care.

There are two types of fiduciary relationships under Utah law: those "specifically created by contract" and those "implied in law due to the factual situation surrounding the involved transactions and the relationship of the parties to each other." *First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1332 (Utah 1990) (citation omitted). The Plaintiffs argue that the second type of relationship exists here. But the Plaintiffs have cited no cases holding that a lending institution, without more, has a fiduciary duty to borrowers. In contrast, the Utah Supreme Court has held that there is no fiduciary duty between a mortgagor and a mortgagee. *Id.* ("[T]he relation of mortgagor and mortgagee is not of a fiduciary character.") (quotations and citations omitted). The Utah Supreme Court noted that "[a] majority of courts decline to impose

6

a duty on a lender absent a contractual basis for doing so." *Id.* at 1333 n.24 (surveying state court cases); *see also Smith v. Am. Nat. Bank & Trust Co.*, 982 F.2d 936, 944 (6th Cir. 1992) ("A lending institution has no duty to disclose based on its role as a lender.")

The Plaintiffs contend that Lawrence Bank nevertheless owed them a fiduciary duty based on the bank's superior knowledge. The Plaintiffs argue that "a duty of a lender can be found when lender involvement goes beyond a traditional role or where the lender misrepresents materials facts to . . . third parties." *DeBry v. Valley Mortg. Co.*, 835 P.2d 1000, 1003 (Utah Ct. App. 1992). The Plaintiffs refer to their claims for fraudulent inducement, fraudulent misrepresentation, and civil conspiracy as evidence that Lawrence Bank functioned as more than a traditional lender. But, as the court discusses below, these claims are not plausible. At most, the Plaintiffs' allegations establish that Mr. Clark met with the Indian Ridge Defendants to understand the investment, that he received monthly reports, and that he visited the construction site four times. But a bank conducting due diligence does not transform the relationship between a borrower and a lender into one giving rise to a duty based on superior knowledge or a special relationship. There was no reason for Lawrence Bank to assume that the Plaintiffs had not conducted their own due diligence, and the bank's practices here did not extend beyond the traditional role of a lender. As a result, Lawrence Bank and Mr. Clark did now owe the Plaintiffs a fiduciary duty.

Because the existence of a duty is an essential element of the Plaintiffs' claims for negligence and breach of a fiduciary duty, the court DISMISSES these causes of action.

### III.  Fraudulent Inducement, Fraudulent Misrepresentation, and Fraudulent Nondisclosure

The Plaintiffs bring three causes of action against Lawrence Bank and Mr. Clark based on

fraud. Federal Rule of Civil Procedure 9(b) requires Plaintiffs to plead these claims with particularity. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). In addition, to maintain their claims for fraudulent inducement or fraudulent misrepresentation, the Plaintiffs must show:

> (1) That a representation was made; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage.

*Franco v. The Church of Jesus Christ of Latter-day Saints*, 21 P.3d 198, 207-08 (Utah 2001).

The Plaintiffs allege that all of the Defendants represented that the lots the Plaintiffs were financing were improved with gas, electric, water, and sewer lines. The Plaintiffs also contend that the Defendants knew that it would be impossible for the Plaintiffs to visit the lots in question. Specifically referring to Lawrence Bank and Mr. Clark, the Plaintiffs assert that these Defendants knowingly made false representations in both the closing instructions provided to the title companies and in the loan documents themselves.

These allegations fail to state a cause of action for fraudulent inducement or fraudulent misrepresentation. First, the title documents were provided to the title companies and not to the Plaintiffs. As a result, the Plaintiffs could not have relied on any misrepresentations contained in the title documents when they signed the construction loan agreements or authorized Lawrence Bank to disburse the funds from the construction loans.

As for the alleged misrepresentations in the loan documents, the Plaintiffs focus their argument on language stating that "the *borrower* is representing that improvements are located

on the property at the time of closing." (Compl. ¶ 163 (emphasis added).) The Plaintiffs maintain that Lawrence Bank knew that this language was false because Mr. Clark conducted an inspection of the property. But the Plaintiffs cite to no case that would impose liability on Lawrence Bank for drafting these documents where the Plaintiffs signed them as their own representations. Instead, the Utah Supreme Court has stated:

> The one who complains of being injured by such a false representation cannot heedlessly accept as true whatever is told him, but has the duty of exercising such degree of care to protect his own interests as would be exercised by an ordinary, reasonable and prudent person under the circumstances; and if he fails to do so, is precluded from holding someone else to account for the consequences of his own neglect.

*Mikkelson v. Quail Valley Realty*, 641 P.2d 124, 126 (Utah 1982).

Indeed, "[t]here is nothing in the pleadings to indicate [the Defendants were] in a better position than were the [Plaintiffs], to have access to the relevant information . . . . As purchasers of commercial property, the [Plaintiffs] could make inquiries themselves." *DeBry*, 835 P.2d at 1007. The Plaintiffs' argument that they are from out-of-state and could not visit the project site is unpersuasive. For the cost of an airplane ticket to Missouri, the Plaintiffs could have investigated the actual state of their investment.

The Plaintiffs' fraudulent nondisclosure claim fails for similar reasons. "[I]n order to be held liable for fraudulent nondisclosure, there must have been a duty to disclose, the burden of establishing which is on the party alleging the fraud and the determination of which is a question of law for the court to decide." *First Sec. Bank of Utah N.A.*, 786 P.2d at 1328–29. The Plaintiffs cite to *DeBry* for the proposition that a duty to disclose can arise between a lender and a borrower in special circumstances, including when the bank has knowledge of fraud or when the bank has access to material information. But *DeBry*'s special circumstances exception

9

applies to third parties only. *DeBry*, 835 P.2d at 1007 ("Where 'special circumstances' exist *between a lender and a third party*, courts have found a duty on the lender's part to reveal certain material facts." (citations omitted) (emphasis added)). Here, the Plaintiffs are not third parties with respect to Lawrence Bank. Rather, they are in a contractual relationship. Utah courts will not find a duty to speak "where the parties deal at arm's length, and where the underlying facts are reasonably within the knowledge of both parties. Under such circumstances, the plaintiff is obliged to take reasonable steps to inform himself, and to protect his own interests." *Sugarhouse Fin. Co. v. Anderson*, 610 P.2d 1369, 1373 (Utah 1980).

The court also notes that the Plaintiffs had already signed the construction loan agreements and agreed to disburse some of the funds from these loans before they knew that Lawrence Bank or Mr. Clark would be involved, rendering impossible the Plaintiffs' contention that these Defendants induced them to invest.

For these reasons, the court DISMISSES the Plaintiffs' claims for fraudulent inducement, fraudulent misrepresentation, and fraudulent nondisclosure against Lawrence Bank and Mr. Clark.

## IV. Unjust Enrichment

The Plaintiffs allege that Lawrence Bank and Mr. Clark were unjustly enriched by their actions. To establish a claim of unjust enrichment, "it must be shown that (1) a benefit was conferred, (2) the conferee appreciated or had knowledge of the benefit, and (3) the conferee accepted or retained the benefit under circumstances making it inequitable to retain the benefit without making payment of its value." *Thorpe v. Washington City*, 243 P.3d 500, 507 (Utah Ct. App. 2010). But an "unjust enrichment claim is an equitable remedy" and "[i]t is settled in Utah

10

that the law will not imply an equitable remedy when there is an adequate remedy at law." *Id.* "[W]hen seeking an equitable remedy, a plaintiff must affirmatively show a lack of an adequate remedy at law on the face of the pleading." *Id.* (citations and quotations omitted).

The Plaintiffs fail to affirmatively plead the lack of an adequate remedy at law in their Complaint. The Plaintiffs also fail to allege that Lawrence Bank received any benefit from the transactions. The funds that were disbursed from the construction loans went to other Defendants in the suit, not to Lawrence Bank. Indeed, Lawrence Bank must recuperate these funds to be made whole. While Plaintiffs argue in their moving papers that Lawrence Bank receives interest payments on the loans, this allegation is not contained in their Complaint. In any event, the interest payments were authorized by contract and the Plaintiffs must seek a remedy at law if they believe that Lawrence Bank was not contractually entitled to these payments.

Because the Plaintiffs fail to establish that an adequate remedy at law does not exist and fail to plead an essential element of their claim, the court DISMISSES their cause of action for unjust enrichment.

## V. Conversion

The Plaintiffs also plead a count for conversion. The Plaintiffs allege that Lawrence Bank and Mr. Clark unlawfully deprived the Plaintiffs of the right to use the construction loans or the structures being built with those funds. In particular, the Plaintiffs maintain that this deprivation occurred due to the Defendants' failure to deliver goods and services they represented they would deliver.

Conversion is "an act of wilful interference with a chattel, done without lawful

11

justification by which the person entitled thereto is deprived of its use and possession." *Allred v. Hinkley*, 328 P.2d 726, 728 (Utah 1958). "[A] conversion does not occur until the defendant exercises control over property that is inconsistent with the plaintiff's right of possession to that property." *Fibro Trust, Inc. v. Brahman Fin., Inc.*, 974 P.2d 288, 296 (Utah 1999). To state a conversion claim, the Plaintiffs must plead that Lawrence Bank and Mr. Clark exercised control over property that was inconsistent with the Plaintiffs' right of possession. The Plaintiffs plead no such deprivation. The Plaintiffs authorized the use of the construction funds and there is no evidence that Lawrence Bank interfered with any of the lots at the project site. As a result, the court DISMISSES the Plaintiffs' claim for conversion.

## VI. Conspiracy and Claims under the Racketeer Influenced and Corrupt Organizations Act (RICO)

Plaintiffs allege a number of conspiracy claims against Lawrence Bank and Mr. Clark, including a claim for civil conspiracy under the RICO statute and two claims of joint venture and conspiracy. The court first examines the RICO cause of action.

### A. Civil RICO

To state a civil RICO claim under 18 U.S.C. § 1962(c), Plaintiffs must allege that Lawrence Bank and Mr. Clark "(1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1100 (10th Cir. 1999). The court finds that the Plaintiffs fail to adequately plead the first and fourth prong of this test.

#### i. *"Participated in the Conduct of"*

In *Reves v. Ernst & Young*, 507 U.S. 170 (1993), the Supreme Court adopted the "operation or management" test to determine whether a defendant has participated in the conduct

12

of a RICO enterprise:

> In order to "participate, directly or indirectly, in the conduct of such enterprise's affairs," one must have some part in directing those affairs. Of course, the word "participate" makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but some part in directing the enterprise's affairs is required.

*Id.* at 179.

This test has been analyzed under two standards. According to the First Circuit, the entity or individual must "knowingly implement[] decisions" made by upper management. *United States v. Oreto*, 37 F.3d 739, 750 (1st Cir. 1994). According to the Second Circuit, the entity or individual must "exercise[] broad discretion in carrying out the instructions of his principal." *United States v. Diaz,* 176 F.3d 52, 92 (2d Cir. 1999). The Tenth Circuit has not yet adopted either of these standards. *See United States v. Hutchinson*, 573 F.3d 1011, 1034 (10th Cir. 2009) (finding liability under either interpretation of the *Reves* test and noting that "[h]appily, we have no need today to weigh into the debate over what it takes to 'participate' in the conduct of an enterprise."). The Plaintiffs argue that the court should focus on the "participant's ability to formally or informally control the direction of the scheme or enterprise." (*See* Pls.' Opp. Mem., at 24, Dkt. 17.) But regardless of which standard the court adopts, the Plaintiffs have not adequately pled that either Lawrence Bank or Mr. Clark participated in the conduct of the alleged racketeering activity.

To impose liability under the *Reves* test, the requisite degree of control "must rise above the level of a company 'provid[ing] their regular services.'" *Albright v. Attorney's Title Ins. Fund*, 504 F.Supp.2d 1187, 1205 (D.Utah 2007) (quoting *BancOklahoma Mortg. Corp.*, 194 F.3d at 1101). "Simply because one provides goods or services that ultimately benefit the enterprise

13

does not mean that one becomes liable under RICO as a result." *BancOklahoma Mortg. Corp.*, 194 F.3d at 1102 (quoting *University of Maryland at Baltimore v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir.1993)).

Here, the Plaintiffs allege that Lawrence Bank was not simply providing its regular services because it approved forms containing false representations about the status of construction at Indian Ridge. But the Tenth Circuit has held that "failing to correct . . . false [] forms" does not demonstrate the control necessary to support a RICO claim. *BancOklahoma Mortg. Corp.*, 194 F.3d at 1101. While *BankOklahoma* was a case about title companies and not a bank, the Tenth Circuit's reasoning is persuasive here.

The Tenth Circuit's decision in *Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006), is also instructive. In that case, an urban renewal agency in Oklahoma City condemned Mr. Tal's land in order to use it as a parking lot and public green space. *Id.* at 1250. Mr. Tal's subsequent bid for a renewal development contract that would be part of the overall renewal scheme was awarded to a competing developer. *Id.* Mr. Tal alleged a RICO claim against the competing developers for misrepresenting the strength of their financial backing to the urban renewal agency. *Id*. at 1269. The Tenth Circuit found these misrepresentations amounted to, at most, "*an attempt to influence* the Renewal Authority and the city council through misrepresentations, *not through operation or management*." *Id*. at 1270 (emphasis added). "Misrepresenting material facts to influence a selection process is a serious allegation to be sure, but does not rise to the level of participation in the operation or management of the Renewal Authority and the city council." *Id.*

The Plaintiffs' allegations fall short for similar reasons. Even if Lawrence Bank knew

14

that its loan documents contained false representations and even if these misrepresentations were made in an attempt to influence the Plaintiffs, the case law is clear that RICO requires more than knowledge or financial influence to establish control or operation.

        ii.      *"Racketeering Activity"*

The Plaintiffs' RICO claim further fails because the Plaintiffs have not established that Lawrence Bank and Mr. Clark were involved in "racketeering activity." "To prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239 (1989) (emphasis in original). The Plaintiffs argue that the Defendants committed predicate acts of mail fraud and interstate transport of stolen property. But the Plaintiffs have not shown that these alleged predicate acts pose a threat of continued criminal activity. Indeed, there is no evidence that Lawrence Bank has any incentive to make further loans in connection with Indian Ridge. Such loans would only result in costly defaults. As a result, the Plaintiffs have not shown that Lawrence Bank and Mr. Clark engaged in any racketeering activity.

    B.      <u>Joint Venture and Conspiracy</u>

Lawrence Bank and Mr. Clark also move to dismiss the Plaintiffs' claims for joint venture and conspiracy. These claims fail for the same reason that the court dismisses the Plaintiffs' civil RICO claim. As a result, the court DISMISSES all of the Plaintiffs' claims for joint venture, conspiracy, and civil RICO liability.

**VII.   Remaining Claims**

The only remaining causes of action in the Plaintiffs' Complaint are two counts for

breach of contract and for breach of the covenant of good faith and fair dealing.  Lawrence Bank and Mr. Clark point out that they were not parties to the contracts in question and the Plaintiffs clarify in their Memorandum in Opposition that they did not intend to allege these claims against either of these Defendants.  Consequently, the Motion to Dismiss these claims is moot.

CONCLUSION

For the reasons stated above, Lawrence Bank and Mr. Clark's Motion to Dismiss (Dkt. 5) is GRANTED and all claims against Lawrence Bank and David Clark are DISMISSED WITH PREJUDICE.  The Plaintiffs have had numerous chances to plead their claims in at least two related cases, and the court will not allow further amendment.

SO ORDERED this 21st day of October, 2013.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge